IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LORRIE MARLING,

                Plaintiff,                OPINION & ORDER

  v.

                                            14-cv-146-jdp

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

---

      Plaintiff Lorrie Marling seeks judicial review of a final decision of the Commissioner of Social Security finding her not disabled within the meaning of the Social Security Act. Marling asserts that remand is necessary because the record in front of the administrative law judge (ALJ) was incomplete. She also argues that the ALJ improperly weighed her treating doctor's medical opinion and failed to explain the extent to which he found Marling credible. Finally, Marling maintains that the ALJ's decision was conclusory and that the RFC was not adequately supported. For this last reason, the court will remand the case for reconsideration.

BACKGROUND

      Unless otherwise noted, the court draws the following procedural and factual background from the ALJ's written opinion. Where appropriate, the court cites to the Administrative Record, Dkt. 5, to supply additional relevant information.

      Marling suffers from an immune disease that makes her fatigued and very susceptible to infection. She was not diagnosed until 2006, but she was born without a spleen and she regularly suffered sinus and respiratory infections well before diagnosis. Marling has a high school education and has held various jobs as a bank teller and a certified nursing assistant. She has not worked since 2009.

Marling applied for disability benefits in 2009 and was found not disabled on April 5, 2011. She did not challenge that decision, but instead filed another application alleging an onset date of disability of May 2, 2011. The Social Security Administration determined that Marling was insured through June 30, 2011, but denied her application. She requested a hearing, which she had on September 20, 2012, in front of ALJ Joseph Jacobson. The ALJ later issued a decision finding Marling not disabled. R. 11-18.

In his decision, the ALJ found that Marling had not engaged in substantial gainful activity between May 2, 2011, and June 30, 2011. He also found that within that time period, Marling suffered from the severe impairment of hypogammaglobulinemia, secondary to congenital asplenia. R. 13. The ALJ next compared Marling's impairment to the listed impairments in 20 C.R.F. Part 404, Subpart P, Appendix 1. Specifically, the ALJ focused on the immune system disorders in Listing 14.00. He found that Marling did not meet or medically equal a listing. R. 14. The ALJ then determined that Marling had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but he limited her to occasional interaction with the public and co-workers (with no tandem tasks). *Id.* The ALJ also provided that Marling be allowed to be off task up to 10 percent of the workday and be afforded regularly scheduled breaks. *Id.* Although he acknowledged that Marling suffers from recurrent illness and infection, the ALJ found that her immune disease is mild and stable, and that she appears in good health. R. 15.

The ALJ found Marling's statements concerning the intensity, persistence, and limiting effects of her impairment credible and consistent with the RFC. *Id.* He found that although Marling was not able to perform her past work, there were jobs available to her in the economy and thus she was not disabled. R. 17. The Appeals Council declined to review Marling's claim

on January 2, 2014. She timely sought judicial review in this court under the Social Security Act, 42 U.S.C. § 405(g).

## ANALYSIS

Marling contends that the ALJ erred by deciding her case based on an incomplete medical record. She further contends that the ALJ improperly discredited her treating doctor's opinion. Finally, she asserts that although the ALJ claimed to have found her credible, he did not actually credit her statements because if he had, then he would have incorporated more limitations into her RFC and found her disabled. For these reasons, Marling argues that her case should be reversed and remanded.

When a federal court reviews a final decision by the Commissioner of Social Security, the Commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The reviewing court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, a reviewing "court must conduct a critical review of the evidence before affirming the [C]ommissioner's decision, and the decision cannot stand if it lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Hemminger v. Astrue*, 590 F. Supp. 2d 1073, 1079 (W.D. Wis. 2008) (internal citations omitted). To provide the necessary support for a decision to deny benefits, the ALJ must "build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

**A.  The incomplete record**

Marling alleges that some of her treatment records were not included in the material in front of the ALJ. Specifically, she claims that a January 19, 2011, record from her treating doctor, Stephen Rudisill, MD, and a March 12, 2009, record from her treating immunologist, Brent Kooistra, MD, were missing. However, these records were apparently in the record of her previous application for benefits that was denied in 2011, and Marling acknowledges that they were available to the state agency doctors who reviewed her most recent application. R. 70-71, 83. Marling nevertheless argues that by omitting this evidence, the ALJ failed to associate the 2011 decision with her current claim.

The Social Security Administration, Office of Hearings and Appeals, *Hearings, Appeals, and Litigation Law Manual* (HALLEX) provides guidance on admitting material evidence into the record and states that "[i]f there was a prior ALJ decision, the ALJ must associate the prior ALJ decision with the current claim(s) file." HALLEX I-2-6-58(B). The circuits are split regarding the binding effect of HALLEX, and the Seventh Circuit has yet to decide the issue. *Davenport v. Astrue*, 417 F. App'x 544, 547 (7th Cir. 2011). But district courts in this circuit have concluded that "the HALLEX lacks the force of law, [] and is 'entitled to respect' only to the extent it is persuasive." *Anderson v. Astrue*, No. 09-cv-2399, 2011 WL 2416265, at * 11 (N.D. Ill. June 13, 2011); *see also McMurtry v. Astrue*, 749 F. Supp. 2d 875, 881 (E.D. Wis. 2010) (citing cases). The court need not resolve the issue. Regardless of whether HALLEX is binding, the ALJ in this case associated the 2011 decision in his own 2012 decision, both mentioning it explicitly, R. 11, and including the decision in the record, R. 64-73. By doing so, the ALJ complied with the mandate of HALLEX I-2-6-58(B). Because the ALJ associated the 2011 decision with her current claim, this argument provides no basis for remand.

There is another section of the manual that specifically addresses the incorporation of evidence from prior claims under certain procedural circumstances, HALLEX I-2-1-13(B), but Marling does not argue that this section, or any of its requisite circumstances, applies in this case. *See* Dkt. 19, at 7. Marling had the opportunity to supplement the record both at and after her hearing and she did add other evidence. R. 34-35, 377. But she did not submit the January 19, 2011, or March 12, 2009, records. Although the ALJ does have a duty to develop the record, there was nothing to indicate to the ALJ that there was a gap or that he did not have all of the material evidence necessary to decide the case. *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) ("ALJs have a duty to develop a full and fair record and must order supplemental testing when the gap in the medical record is significant and prejudicial.").

Most importantly, Marling has not articulated to this court what substance the missing records provide that would help her case. In fact, the state agency doctors who cited the records in their own assessments and gave them "controlling weight" came to the conclusion that Marling's impairment was "not severe." R. 83, 85. And the ALJ declined to credit those state agency opinions in his own assessment, giving them "little weight." R. 16. Thus it seems that the records actually undermine Marling's claim. But in any case, the court is unable to determine whether the missing records matter to her case and she does not argue that HALLEX I-2-1-13(B) is applicable. There is no basis to remand this case to require the ALJ to consider these records.

**B. Treating source opinion**

Marling argues that the ALJ wrongly rejected the opinion of her treating doctor, Dr. Rudisill. An ALJ must give controlling weight to the opinion of a treating source unless the opinion is unsupported by medical evidence or is inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c). If an ALJ declines to give controlling weight to a treating

5

source opinion, he must determine what lesser weight it deserves based on a number of factors and he must explain his reasoning. *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014); § 404.1527(c). Those factors include: (1) whether the doctor has an examining relationship with the plaintiff; (2) whether the doctor has a treating relationship with the plaintiff, which also incorporates the length, nature, and extent of the relationship; (3) how well supported the doctor's opinion is by relevant evidence; (4) how consistent the doctor's opinion is with the record as a whole; (5) whether the doctor has a relevant specialization; and (6) any other factors that tend to support or contradict the opinion. § 404.1527(c). The ALJ properly applied the material factors in this case.

First, the ALJ correctly disregarded Dr. Rudisill's opinion that Marling was "permanently unable to work in any capacity" because that ultimate conclusion is reserved for the Commissioner. R. 15; *Clifford,* 227 F.3d at 870 (7th Cir. 2000) (citing 20 C.F.R. § 404.1527(e)) ("A claimant [] is not entitled to disability benefits simply because a physician finds that the claimant is 'disabled' or 'unable to work.' Under the Social Security regulations, the Commissioner is charged with determining the ultimate issue of disability.").

Next, the ALJ gave only "little weight" to Dr. Rudisill's opinion that Marling is unable to have contact with the general public because of her risk of infection. R. 16. The ALJ acknowledged Dr. Rudisill's treating relationship with Marling, but reasoned that the complete bar on public contact was inconsistent with the medical evidence. *See Scrogham*, 765 F.3d at 697; § 404.1527(c). Specifically, the ALJ found that Dr. Rudisill's opinion was not consistent with the opinions of two of Marling's other treating doctors, who specialized in immunology and endocrinology. *Id.* James D. Merrick, MD, the immunologist, stated that Marling "appears to be in generally good health" and characterized Marling's immune disease as "mild" multiple times in the record in 2012. R. 338, 349, 357. Richard Weirich, MD, PhD, the endocrinologist,

6

limited her contact with sick people only, as opposed to the entire public, on October 2, 2012. R. 378. The ALJ found that Dr. Merrick and Dr. Weirich's opinions outweighed Dr. Rudisill's opinion because of their specializations and the consistency of their opinions with other evidence in the record. R. 16. The ALJ found that Marling is not homebound and that she appears in public to grocery shop and attend her appointments. R. 15. After applying the § 404.1527(c) factors, the ALJ gave their opinions "significant weight." R. 16.

The ALJ could have provided more citations to evidence in the record besides other medical opinions to show that Dr. Rudisill's opinions were inconsistent with the record as a whole. A claimant need not be homebound to be found disabled. But the ALJ weighed the § 404.1527(c) factors and explained his reasoning. Therefore, the ALJ's analysis was not so deficient as to warrant remand.

## C.  Marling's credibility and RFC

Marling argues that the ALJ's credibility determination was meaningless boilerplate. This is not an unusual argument when an ALJ finds the claimant less than credible. But in this case, the ALJ found that Marling's statements were "credible and consistent" with the RFC. R. 15. Marling argues that if the ALJ found her to be credible and actually considered her testimony, then he would have also found her to be disabled.

"An ALJ is in the best position to determine the credibility of witnesses," and the court will uphold his credibility determination unless it was patently wrong. *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008); *see also Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010) (providing that judicial review of an ALJ's credibility determination is deferential and upheld unless it is patently wrong). An ALJ's decision is not patently wrong if he "consider[ed] the entire case record and g[a]ve specific reasons for the weight given to the individual's statements." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009) (citing SSR 96–7p). And the ALJ may accept

7

Marling's statements about the intensity and persistence of her symptoms without adopting her opinion that she is disabled; that determination is his to make. *Clifford*, 227 F.3d at 870.

In this case, the ALJ described Marling's daily activities, her statements about her illnesses and fatigue, her objective medical records, and her doctors' opinions. R. 15-16. He found that her statements were generally credible. R. 15. But Marling's argument is *not* that the ALJ was patently wrong in finding her credible. Instead, she argues that his credibility determination was inconsistent with the RFC and with his ultimate finding that she was not disabled. Marling alleges that the ALJ did not adequately explain this inconsistency. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("ALJs must explain perceived inconsistencies between a claimant's activities and the medical evidence."). "An ALJ need not discuss every piece of evidence, but must logically connect the evidence to the ALJ's conclusions so that we can provide meaningful review." *Outlaw v. Astrue*, 412 F. App'x 894, 897 (7th Cir. 2011) (also stating that "RFC determinations are inherently intertwined with matters of credibility") (citations omitted).

In her hearing testimony, Marling voiced concerns about coming into contact with people. R. 50-54. She also described her illnesses and fatigue. *Id.* Her argument to the court is that she described herself as much sicker, and sick more often, than the ALJ credited in his questions to the vocational expert or in the RFC. The ALJ asked the vocational expert about the employability of a hypothetical person of Marling's age, education, and work experience, but limited to only occasional interaction with the public and co-workers, who needs regularly scheduled breaks and must be allowed to be off task up to 10 percent of the workday. R. 56-57. The ALJ then adjusted the hypothetical to describe someone limited to no interaction at all with the public or coworkers, who must be off task more than 10 percent of the time. R. 57-58. The

8

vocational expert responded that the first hypothetical person would be employable, but the second would not.

The ALJ's subsequent RFC adopted the first hypothetical's limitations of only occasional interaction with the public and coworkers, regularly scheduled breaks, and the requirement that she be allowed to be off task up to 10 percent of the day. R. 14. But these limitations do not really address Marling's specific issue. The important question is whether Marling is too sick too often to be able to work. Allowing her to be off task up to 10 percent of each day may address her fatigue, but it does not address her primary concern: the regular infections and illnesses caused by her immune deficiency. If, as Marling argues, she is too sick (and contagious) to go into work more than 10 percent of the time, then she exceeds these limitations.

The ALJ found "no medical evidence or physician opinions to support" Marling's position that she must be off task more than 10 percent of the time or miss work more than two days per month, R. 17, but this statement itself is unsupported. The frequency of her medical appointments as documented in the record suggests that Marling may need to be out of work more than 10 percent of the time just to see her doctors. The ALJ's decision fails to resolve this issue and is therefore deficient. The court will remand this case for reconsideration of how severe the effects of Marling's immune deficiency are on her ability to work.

ORDER

IT IS ORDERED that:

1. The decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying plaintiff Lorrie Marling's application for disability insurance benefits is REVERSED and REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

2. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered March 31, 2015.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge

Case: 3:14-cv-00146-jdp   Document #: 20   Filed: 03/31/15   Page 10 of 10